# IN THE MATTER OF UNCLAIMED MONEYS ON DEPOSIT IN THE REGISTRY OF THE COURT.

## September 18, 1913.

1. *Courts, unclaimed moneys in registry of—Deposit in Federal Treasury after five years:* Balances of assets in bankruptcy cases deposited with clerks of court by trustees or referees on closing the estates instead of having been distributed with the final dividends, as they should have been, should after remaining unclaimed for five years be transferred from the registry of the court to the account of the United States Treasury, under Rev. Stat. sec. 996, as amended by act of March 3, 1911, 26 Stat. 1083. . Deposits to cover awards in admiralty cases, remaining unclaimed for five years, should be disposed of in the same way; also a tender paid into court in behalf of a libellee but not withdrawn although the tender had not been accepted, the suit had gone to judgment and the judgment had been fully satisfied.

2. *Same—Other miscellaneous cases of unclaimed deposits considered.*

*On request of clerk for instructions as to disposition of unclaimed moneys in registry of court.*

*A. E. Murphy,* clerk, *pro se.*

CLEMONS, J.   An auditor of the Department of Justice in his report respecting the accounts of the clerk of this court notes:

"That certain items, amounting to $71.80, in admiralty and bankruptcy cases, have remained in the registry of the court for more than five years, and that certain other items, amounting to $217.36, in deceased seamen cases have remained in the registry for more than six years."

Upon this report, the Assistant Attorney-General in charge of such matters asks the clerk for advice "whether or not the above-mentioned amounts have been deposited to the credit of the Treasurer of the United States in accordance with law."

As transfers of moneys from the registry of the court to the credit of the Treasury in such cases are made only on order of a judge, the question is one for the court. Rev. Stat. secs. 995, 996, am. act of March 3, 1911, 36 Stat. 1083; Rev. Stat. sec. 4545.

[1] In the bankruptcy cases contemplated by the above report, the referees, by reason either of ignorance of their duties or of carelessness, have closed (or attempted to close) the estates, leaving as high as $16.39 (In re Geo. C. Stratemeyer, No. 69) unadministered and in most instances small amounts, as low as $1.55, and have themselves turned these moneys over, or permitted them to be turned over by the trustees, to the clerk of court by whom they have been held on deposit in the court registry for more than five years in each case. In all of these cases the dividends paid were insufficient to satisfy creditors. In none of them do the balances on deposit represent dividends awarded to definite creditors but remaining unpaid or un-

claimed,—in which case their disposition in the manner suggested by the department's inquiry, above, would be more clear than it is here.

The law governing the matter is Rev. Stat., sec. 996, as amended, 36 Stat. 1083, which provides inter alia:

"In every case in which the right to withdraw money so deposited has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, it shall be the duty of the judge or judges of said court, or its successor, to cause such money to be deposited in the Treasury of the United States, in the name and to the cerdit of the United States: *Provided,* That any person or persons or any corporation or company entitled to any such money may, on petition to the court from which the money was received, or its successor, and upon notice to the United States attorney and full proof of right thereto, obtain an order of court directing the payment of such money to the claimant, and the money deposited as aforesaid shall constitute and be a permanent appropriation for payments in obedience to such orders."

In order then that moneys may be transferred from the registry of the court to the United States Treasury under this statute, there must exist "the right to withdraw" the money either because the right "has been adjudicated" or "is not in dispute." There may be conditions or circumstances in which no judgment or order has been made awarding or otherwise disposing of the money but in which, nevertheless, a transfer to the Treasury would be proper; for the words of the statute, "the right to withdraw [which] . . is not in dispute," present an alternative to the words "the right to withdraw [which] . . has been adjudicated," and would cover, e. g., as later noted herein, the deposit of a tender, which the depositor might, upon stipulation or upon satisfaction of judgment, withdraw at will, or, e.g., a deposit for any purpose followed by a discontinuance.

The moneys in these bankruptcy cases may in a loose sense be regarded as "adjudicated," or at least they are "not in dispute," as belonging to the creditors—at all events indirectly as cestuis que trust; but the question is, whether there exists the precedent "right to withdraw" them.

These are cases of undistributed assets which are not chargeable with further costs or expenses and which should have been distributed pro rata among the creditors who have proved their claims. In other words, these balances *belong* to the proved creditors, and a judge would, it seems, be authorized to order their withdrawal by the parties entitled thereto—as, indeed, in spite of any right to withdraw, the judge's order for their withdrawal is made necessary by this very section of the statute.

Wherefore, it is held that the quoted provision of the statute applies, and these moneys will be ordered transferred to the Treasury.

In the admiralty suit of Robert R. Hind v. The Brigantine "Consuelo," No. 11, there has been an adjudication which covers the balance of ten dollars of the judgment paid into court over five years ago and remaining unpaid to and unclaimed by the person having the right to withdraw it, an awardee named Hupo. This case falls within the provisions of the statute above quoted, and the court will order the money on deposit therein to be transferred to the Treasury of the United States. In the admiralty suit of K. Imada v. The Steamship "Stanley Dollar," No. 60, the facts are the same as in the case of the "Consuelo," and the court will order the balance of $122.49 transferred to the Federal Treasury.

In the admiralty suit of Thomas J. Ford v. Oceanic Steamship Company, No. 86, there remains in the registry of the court unclaimed fifteen dollars deposited therein more than five years ago by the attorneys for the libellee company as a tender of satisfaction of the libelant's claim. This tender must have been refused, for the suit proceeded to

judgment in favor of the libelant and its full satisfaction appears from the record. So it is clear that the tender having fulfilled its purpose, the libellee (or its attorneys) has "the right to withdraw" the same, and this right cannot be, and is not "disputed." The case is therefore also within the provisions of the statute above quoted, and the court will order transfer of the deposit therein to the Federal Treasury.

The numerous cases of moneys arising from the unclaimed wages and effects of deceased seamen, which moneys have remained in the registry of the court for more than six years, are controlled by Rev. Stat. sec. 4545, as amended, 29 Stat. 689, providing inter alia:

"When no claim to the wages or effects or proceeds of the sale of the effects of a deceased seaman or apprentice, received by a circuit court, is substantiated within six years after the receipt thereof by the court, it shall be in the absolute discretion of the court, if any subsequent claim is made, either to allow or refuse the same. Such courts shall, from time to time, pay any moneys arising from the unclaimed wages and effects of deceased seamen, which in their opinion it is not necessary to retain for the purpose of satisfying claims, into the Treasury of the United States, and such moneys shall form a fund for, and be appropriated to, the relief of sick and disabled and destitute seamen belonging to the United States merchant marine service." These provisions apply, also, to cases of deserting seamen. See Rev. Stat. sec. 4604.

Although the statute thus places the matter, of the payment of such moneys into the Treasury, in the sound discretion of the court, and the six-year period provided does not fix an absolute limit at which it becomes the duty of the court to forthwith order the transfer from the registry to the Treasury, still in view of the fact that in each case, excepting two, over seven years, and in the excepted two very nearly seven years, have elapsed but no claimants have appeared, it seems a reasonable exercise of the court's discretion to at once order such transfer into the United

States Treasury, and an order to that end will be made in these cases.

An anomalous case, in bankruptcy, may be noted, In re Fred L. Schmidt, No. 255, in which the referee has within the past year paid into the registry of the court two dollars. If the facts are, as they are understood, that no creditors proved claims, and that this sum is an unexpected balance of assets, this money should be forthwith paid over to the bankrupt by whom it was originally deposited, and it will be so ordered.

It may be said in conclusion, with reference to the bankruptcy cases first above discussed, that referees and trustees in bankruptcy should in each case be very careful to see that the declaration of a final dividend, or other final disposition, disposes of every cent in the estate.